IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Lorraine R. Harris,**

    Plaintiff,

  v.                                                                             Case No. 2:23-cv-769
                                                                                 Judge James L. Graham
                                                                                  Magistrate Judge Elizabeth P. Deavers

**American Electric Power
Service Corporation,** *et al.***,**

    Defendants.

## Opinion and Order

Plaintiff Lorraine R. Harris brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"). Named as Defendants are American Electric Power ("AEP"), Empower Retirement LLC ("Empower"), JP Morgan Chase Bank NA ("JPMorgan"), and Great-West Trust Co LLC ("Great-West"). This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 26). Defendants ask this Court to dismiss both claims filed by Plaintiff for failure to state a claim upon which relief can be granted. For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 26) is **GRANTED.**

    **I.  Factual Allegations**

Plaintiff was an employee of AEP for over forty years (ECF No. 1 ¶1). During her last eight years with AEP, Plaintiff served as the secretary to the president of the company (*Id.*). During Plaintiff's employment, she participated in the retirement program AEP offered to its employees, known as the AEP Retirement Savings 401k Plan ("the Plan") since 2018 (*Id.* at ¶ 2). Defendant AEP sponsors the plan and serves as the Plan Administrator (*Id.* at ¶ 3). Defendant Empower Retirement, LLC serves as the Plan Recordkeeper and a "ministerial services provider" (*Id.* at ¶ 4). Defendants JP Morgan Chase Bank, NA and Great-West Trust Co., LLC are identified as Plan Trustees in the materials provided to Plaintiff (*Id.* at ¶ 6).

Plaintiff retired from AEP on January 31, 2020. Under the guidance of her new investment advisor, Plaintiff directed Empower by phone to distribute to her the balance of her 401k, valued at $1,698,545.72 on February 19, 2020 (*Id.* at ¶ 11). Plaintiff alleges that Empower agreed to do

1

so and informed her that the check would be sent to her home the next day (*Id.* at ¶ 12). Plaintiff also claims that Empower failed to warn her of the 30-day waiting period required by the Plan and that she detrimentally relied on Empower's assurance that the checks would be sent on February 20, 2020 (*Id.* at ¶¶ 13-14). When the checks did not arrive, Plaintiff contacted Empower who first advised her that the checks would not be mailed until March 3, 2020, before informing her that the mandatory 30-day waiting period would prohibit them from issuing the checks immediately (*Id.* at ¶ 15).

Plaintiff next alleges that Empower failed to place her distributive funds in a "safe harbor" cash account, pending the issuance of her account balance, despite knowing the volatile nature of the markets due to the COVID-19 outbreak (*Id.* at ¶ 16). On March 2, 2020, Plaintiff alleges that Empower informed her that the withdrawal request was being processed and that her account balance had dropped to $1,547,470.34, an amount $150,867.93 less than what Plaintiff was told she was being mailed on February 19, 2020 (*Id.* at ¶ 18-19). Plaintiff eventually received the reduced amount and was offered $51,796.89 by Empower as a good-will gesture (*Id.* at ¶¶ 20-21). Plaintiff declined the initial offer, received the same offer again on March 12, 2020, and declined that offer as well (*Id.* at ¶ 21). A few days later, on March 20, Plaintiff claims that she received two checks from Empower totaling $51,997.71, along with a letter admitting its failures in the handling of the account (*Id.* at ¶ 22). Plaintiff cashed the two checks and claims that her total losses now stand at $98,870.22 (*Id.* at ¶ 23). Plaintiff requests this amount, plus any applicable interest, and reasonable and appropriate attorney's fees and costs in damages.

## II. Procedural Background

Plaintiff filed her Amended Complaint, with a jury demand, on September 21, 2023 (ECF No. 25). Plaintiff's Amended Complaint contained two claims. The first claim, alleged against all Defendants, is for breach of fiduciary duty. Plaintiff alleges that Empower breached its fiduciary duty by (1) not advising her of the 30-day waiting period before releasing her funds and (2) subsequently failing to place the funds in a "safe harbor" account. Plaintiff alleges that the other Defendants, "jointly and severally failed to exercise duties as fiduciaries in the handling, management, and supervision of Empower as administrator of the funds." (ECF No. 25 ¶ 25). The second claim is for breach of the duty to monitor and alleges that AEP, JPMorgan, and Great West "failed to properly supervise, oversee, and monitor its Administrator, Empower, in the discharge

of its duties and that as a direct and proximate result of such failure, the Plaintiff's losses were incurred." (ECF No. 25 ¶ 27).

Defendants filed a Motion to Dismiss the Amended Complaint on September 27, 2023 (ECF No. 26). On October 11, 2023, Plaintiff filed a Response in Opposition to Defendants' Motion (ECF No. 27). On October 18, 2023, Defendants filed their Reply (ECF No. 28) to Plaintiff's Response. Defendants' motion is now ripe for adjudication.

The Court notes that the written Plan documents show that AEP was the Plan Sponsor and Administrator, that JPMorgan and Great-West were the Trustees, and that Empower was the Plan Recordkeeper. (ECF No. 34). *See Stark v. Mars, Inc.,* 790 F. Supp 2d 658, 664 (S.D. Ohio 2011) (Court may consider Plan documents without converting a motion to dismiss into a motion for summary judgment).

### III. Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal,* 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose

3

to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### IV. Analysis

#### A. *Standards for a Breach of Fiduciary Duty Claim*

An individual who participates in an ERISA-governed benefit plan may sue the plan "to obtain other appropriate equitable relief" for violations of ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). Notably, participants may request relief for breaches of fiduciary duty. 29 U.S.C. §1104(a)(1). Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). A claim for breach of fiduciary duty requires the plaintiff to prove: "(1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in harm to the plaintiff." *Chelf v. Prudential Ins. Co. of Am*., 31 F.4th 459, 464 (6th Cir. 2022).

A person is a fiduciary with respect to a plan to the extent:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
(ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

4

> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). A fiduciary within the meaning of ERISA is someone acting in the capacity of manager, administrator, or financial adviser to a plan. *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000).

A functional test is employed to determine fiduciary status. *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan"). A person deemed to be a fiduciary is not a fiduciary for every purpose but only to the extent that he performs one of the described functions. *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001); *see also Pfahler v. National Latex Products Co.*, 517 F.3d 816, 830 (6th Cir. 2007) (for a fiduciary to be held liable, he must have been acting in a fiduciary capacity when taking the challenged action).

The threshold question is not whether the actions of a person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary, that is, was performing a fiduciary function, when taking the action subject to the complaint. *Pegram*, 530 U.S. at 226. The same entity may function as an ERISA fiduciary in some contexts but not in others. *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002). An administrator or manager of the plan is a fiduciary only "to the extent" that he exercises discretionary authority, control, or responsibility respecting the management of the plan, the disposition of its assets, or the administration of the plan. *Pegram*, 530 U.S. at 225-226; 29 U.S.C. § 1002(21)(A). Thus, it is necessary to ask whether a person is a fiduciary with respect to the particular activity in question. *Briscoe*, 444 F.3d at 486.

Persons or entities performing administrative and ministerial functions are not fiduciaries. *Id*. at 488 (entity which performed administrative and ministerial tasks that did not involve the exercise of discretionary authority was not a fiduciary); *see also Flacche v. Sun Life Assur. Co. of Canada*, 958 F.2d 730, 734 (6th Cir. 1992) (mere payment of claims is insufficient to give discretionary control over the management of plan assets or the administration of the plan; defendant company which performed only ministerial functions for the plan was not acting as a fiduciary when it mistakenly calculated plaintiff's retirement benefits); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991) (person without power to make plan policies or interpretations

5

and who performs purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits is not a fiduciary under ERISA). Department of Labor regulations provide that persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, and who perform purely ministerial functions such as "(6) [c]alculation of benefits[,]" and "(10) [p]rocessing of claims[,]" are not fiduciaries. 29 C.F.R. § 2509.75-8(D-2). Only persons who perform the functions described in § 1002(21)(A) with respect to an employee benefit plan are fiduciaries. 29 C.F.R. § 2509.75-8 (D-2).

For a person or an entity which is a fiduciary under ERISA, it must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The fiduciary must also act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions" of ERISA. *Id*. § 1104(a)(1)(D). Fiduciary duties are defined functionally and "attach not just to particular persons, but to particular persons performing particular functions." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (en banc) (quoting Hoz*ier v. Midwest Fasteners, Inc*., 908 F.2d 1155, 1158 (3d Cir. 1990)).

### B. *Plaintiff Fails to Plead a Claim for Breach of Fiduciary Duty by Empower*

Defendants argue that Plaintiff's Amended Complaint fails to plead sufficient facts to support her claim against any Defendant for breach of fiduciary duty under ERISA. Notably, Defendant claims that Plaintiff has failed to allege any facts showing that Empower acted as a fiduciary (ECF No. 26 at 5).

With respect to Empower, Defendant claims that Plaintiff fails to plead any facts establishing any of the prongs outlined in the statute (ECF No. 26 at 4). This Court agrees. Based on the alleged facts, Plaintiff called Empower to release the retirement funds and was told by an Empower representative that they would arrive the next day (ECF No. 25 at ¶ 12). When the checks failed to arrive, Plaintiff called again to request the funds and was told by Empower that the checks would now arrive on March 3, 2020 (*Id.* at ¶ 15). Plaintiff alleges that she was then informed by Empower of a 30-day waiting period ("Waiting Period") that prohibited it from issuing the checks immediately (*Id.*). Empower ultimately enforced the Waiting Period and over that time, Plaintiff's investment portfolio dropped by $150,867.93 (ECF No. 1 at ¶ 18-19).

6

The Plan documents imposed a mandatory 30-day waiting period "following the date of your termination of employment or retirement" before funds in a participant's retirement account could be distributed. (ECF No. 34 at 19). The Plan documents did not contain any provisions or language which would have given Empower discretionary authority or control with respect to the waiting period. Empower did not have the authority to waive or shorten the waiting period.

Empower's actions do not support an inference to the contrary. According to a joint stipulation by the parties, Plaintiff's official retirement date was January 31, 2020. (ECF No. 36). Plaintiff first made a distribution request on February 19. Applying the Plan's waiting period, Empower could not process her request until Monday, March 3, which is when Empower did in fact process Plaintiff's request.

Of course, an Empower representative misspoke on the phone with Plaintiff on February 19 and said that her request would be processed sooner. Empower called Plaintiff on February 24 to correct the misstatement. It later sent a letter to plaintiff on March 19 to explain the situation and advise her that, because of the misstatement, it was sending her an additional check, which represented the difference in value of her account from February 24 to March 2. At best, one could argue that the letter shows that Empower had some discretion to try to make things right when its employees made mistakes. Plaintiff's conversations with Empower do not indicate a level of discretionary authority or responsibility in the administration of the Plan.

Plaintiff also proffers a theory that Empower should have placed her investment account into a "safe harbor" cash account. However, nowhere does the Plan provide for such an account or transaction. Additionally, Plaintiff fails to cite any provision or authority that would have enabled Empower to put her funds into a so-called safe harbor account. For these reasons, the Court finds that Empower is not a fiduciary of the Plan and therefore, Plaintiff's first cause of action against Empower for breach of fiduciary duty fails.

### C. *Plaintiff Fails to Plead a Claim Against AEP, JPMorgan or Great-West*

Lastly, Defendants argue that Plaintiff's complaint fails to state a claim against AEP, JPMorgan, and Great-West. (ECF NO. 26 at 11). ERISA imposes a duty to monitor upon fiduciaries when they "appoint other persons to make decisions about the plan." *In re AEP ERISA Litig.,* 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004). The ERISA statutory scheme states that monitoring should occur "[a]t reasonable intervals" and "in such manner as may be reasonably

7

expected to ensure that [ ] performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75–8.

As applied to this case, the Court agrees with Defendants that Plaintiff has failed to allege facts that show JPMorgan or Great-West had any authority over Empower. Based on the facts, JPMorgan and Great-West's involvement in the Plan can best be described as limited and certainly does not rise to a level in which either would have a duty to monitor the Plan under ERISA. As Trustees, they may have been fiduciaries in some regards, but the complaint does not allege that either one owed a fiduciary duty to Plaintiff with respect to her request for the disbursement of funds. At the very least, she does not allege that either one directly breached a fiduciary duty regarding the request. Instead, she asserts only that JP Morgan and Great-West failed to supervise Empower, but there is no language in the Plan to support her assertion that they had such a duty.

Moving to AEP, the Plan classifies AEP as the plan administrator which had the duty to supervise the Plan. Courts have held that "[t]he power to appoint and remove trustees carries with it the concomitant duty to monitor those trustees' performance." *Stockwell v. Hamilton*, 163 F. Supp. 3d 484, 491 (E.D. Mich. 2016). Most courts treat a duty to monitor claim as deriving from a successful claim of a breach of fiduciary duty." *Parker v. GKN N. Am. Servs., Inc.,* No. 21-12468, 2022 WL 3702072, at *6 (E.D. Mich. Aug. 26, 2022) ("If a breach of fiduciary duty claim survives so too does the claim for failure to monitor."); *see also Majad ex rel. Nokia Retirement Savings & Investment Plan v. Nokia, Inc.*, 528 F. App'x 52, 57 (2d Cir. 2013) (rejecting plaintiffs' claims for failure to monitor retirement plan where there was no underlying ERISA breach of fiduciary duty claim). As applied to this case, the Court finds that the duty to monitor claim against AEP fails. The duty to monitor derives from a successful claim of a breach of fiduciary duty and because Empower did not commit an underlying breach of fiduciary duty, Plaintiff's duty to monitor claim against AEP fails.

This leaves only a direct breach of fiduciary duty claim against AEP. Even assuming that AEP was a fiduciary, the complaint fails to allege any facts that show AEP directly breached a duty with respect to Plaintiff's request for disbursement. Rather the complaint (in the first claim for breach of fiduciary duty), alleges that "Empower's negligence…is chargeable to AEP." (ECF No. 25 at 5). Plaintiff's brief in response adopts the same position, arguing only that AEP had a duty to monitor. Therefore, the Court finds that Plaintiff has failed to allege a claim for breach of fiduciary duty against AEP.

## V. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 26) is **GRANTED.**

**IT IS SO ORDERED.**

                                                                                           s/ James L. Graham
                                                                                           JAMES L. GRAHAM
                                                                                           United States District Judge

DATE: October 7, 2024